UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAMWARI and SHAMWARI 2, <br><br> *Plaintiffs*, <br><br> -against- <br><br> LETITIA JAMES, in her official capacity as the Attorney General of the State of New York, <br><br> *Defendant*. | **COMPLAINT** <br><br> 1:26-cv-2620 |

## PARTIES

1. Plaintiff Shamwari is the pseudonym of a natural person.

2. Plaintiff Shamwari 2 is the pseudonym of a natural person.

3. Defendant, Letitia James ("James"), is the Attorney General of the State of New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. Section 1331 because the claims asserted herein arise under the Constitution of the United States (the "Constitution").

5. Venue is proper in this District under 28 U.S.C. Section 1391(b)(1) because James has a principal office in this District.

## ALLEGATIONS

### I. The Desired Speech

6. Upon obtaining the relief sought herein, Shamwari would, on the basis of his observations, descriptions, evaluations, and interpretations of speech made by Shamwari 2 to Shamwari, advise Shamwari 2, by speaking privately to Shamwari 2 while Shamwari 2 is in the State of New York, how to modify Shamwari 2's behavior in order to: (i) lessen or eliminate symptomatic, maladaptive, or undesired behaviors of Shamwari 2; (ii) enhance Shamwari 2's interpersonal

1

relationships; (iii) enhance Shamwari 2's personal effectiveness; (iv) enable Shamwari 2 to make work and life adjustments; and (v) enable Shamwari 2 to improve his behavioral and mental health (the "Desired Speech," whose purpose is hereinafter referred to as "Helping Shamwari 2") (*N.B.*: nothing herein is intended to convey any gender-related information pertaining to Shamwari or Shamwari 2).

7.      Upon obtaining the relief sought herein, Shamwari, in order to Help Shamwari 2, would, through speech between Shamwari and Shamwari 2, engage in: (i) psychological testing; (ii), neuropsychological testing; (iii) counseling; (iv) psychoanalysis; (v) psychotherapy; (vi) the diagnosis and treatment of any mental, nervous, emotional, cognitive, or behavioral disorders, disabilities, ailments or illnesses, alcoholism, substance abuse, disorders of habit or conduct, psychological aspects of physical illness, accident, injury, or disability, or psychological aspects of learning (including learning disorders); and (vi) the use of classification systems.

8.      In conversations between Plaintiffs in which Shamwari's purpose is, partly or fully, to Help Shamwari 2, Shamwari expects that not everything he says would constitute Desired Speech.

9.      In conversations between Plaintiffs in which Shamwari's purpose is other than to Help Shamwari 2, Shamwari expects that he would commonly engage in Desired Speech.

## II.    Only Certain Persons May Engage in the Type of Speech in Which Shamwari Desires to Engage

10.      Chapter 16, Article 153, Title VIII, Section 7601, of the New York Education Law is:

> Only a person licensed or otherwise authorized under this article shall be authorized to practice psychology or to use the title "psychologist" or to describe his or her services by use of the words "psychologist", "psychology" or "psychological" in connection with his or her practice.

(the "License Requirement") (*N.B.*: all references herein to the "Education Law" are to Chapter 16, Article 153, Title VIII of the New York Education Law).

11. Shamwari is neither licensed nor otherwise authorized under Chapter 16, Article 153, of the New York Education Law ("Article 153").

12. According to the License Requirement, Shamwari may not "practice psychology." Art. 153, § 7601.

13. Section 7601-a of the Education Law is:

> The practice of psychology is the observation, description, evaluation, interpretation, and modification of behavior for the purpose of preventing or eliminating symptomatic, maladaptive or undesired behavior; enhancing interpersonal relationships, personal, group or organizational effectiveness and work and/or life adjustment; and improving behavioral health and/or mental health. The practice includes, but is not limited to psychological (including neuropsychological) testing and counseling; psychoanalysis; psychotherapy; the diagnosis and treatment of mental, nervous, emotional, cognitive or behavioral disorders, disabilities, ailments or illnesses, alcoholism, substance abuse, disorders of habit or conduct, the psychological aspects of physical illness, accident, injury or disability, psychological aspects of learning (including learning disorders); and the use of accepted classification systems.

(the "Statutory Definition").

**III.    Engagement by an Unlicensed Person in the Type of Speech in Which Shamwari Wishes to Engage is a Crime**

14. Engagement, by a person who is neither licensed nor otherwise authorized under Article 153, in the type of speech that the Desired Speech constitutes is a Class E felony under Education Law Section 6512(1) (the "Felony Provision," and, together with the License Requirement and Statutory Definition, the "Speech Prohibition").

**IV.    Plaintiffs Have Been Harmed, and Will Continue to Be Harmed Absent the Relief Sought Herein, by the Speech Prohibition**

15. Education Law Section 6514(2) directs the Attorney General of the State of New York to prosecute violations of the Felony Provision.

16. James routinely prosecutes persons pursuant to the Felony Provision, including those

3

whose alleged crime is engaging in speech that the Speech Prohibition forbids.

17.    Shamwari fears that, absent the relief requested herein, he would be prosecuted if he were to engage in the Desired Speech.

18.    But for the Speech Prohibition, Shamwari would already be engaging in the Desired Speech.

19.    But for the Speech Prohibition, Shamwari 2 would already be engaging in listening to the Desired Speech.

## V.    The Speech Prohibition is Un-Constitutional

### A.    The Speech Prohibition is Subject to Strict Scrutiny

20.    The Speech Prohibition, insofar as it prohibits Shamwari from engaging in the Desired Speech, prohibits speech based on its subject matter and communicative content.

21.    In order to determine whether one has violated the Speech Prohibition, his speech would have to be examined.

22.    For each of the reasons described in paragraphs 20 and 21 herein, the Speech Prohibition is: (i) content-based; (ii) subject to strict scrutiny, meaning that James bears the burden of demonstrating that the Speech Prohibition serves a compelling governmental interest, is narrowly tailored to achieve that interest, and is the least restrictive means of advancing that interest; and (iii) presumptively un-Constitutional under the First Amendment of the Constitution, which applies to the States through the Fourteenth Amendment of the Constitution and which states: "[a State] shall make no law . . . abridging the freedom of speech" (the "Free Speech Clause").

23.    The questions of whether, and how, strict scrutiny applies to the Speech Prohibition do not depend upon whether the purpose of the Speech Prohibition is other than curtailing otherwise-lawful speech.

24.    The questions of whether, and how, strict scrutiny applies to the Speech Prohibition

do not depend upon the fact that the Speech Prohibition applies to certain speakers, *i.e.*, persons who are neither licensed nor otherwise authorized under Article 153, rather than to all speakers.

25.     The questions of whether, and how, strict scrutiny applies to the Speech Prohibition do not depend upon the extent, if any, that the Speech Prohibition applies to the communicating of advice or assistance derived from scientific, technical, or other specialized knowledge.

26.     The questions of whether, and how, strict scrutiny applies to the Speech Prohibition do not depend upon the extent, if any, that the Speech Prohibition applies to 'professional speech.'

**B.      The Speech Prohibition Violates the First Amendment of the Constitution**

27.     Insofar as Plaintiffs' claims under the Free Speech Clause might appear to be foreclosed by *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023), *Brokamp* has been abrogated by *Chiles v. Salazar*, 146 S. Ct. 1010 (2026), whose dissent recognized *Chiles* as a "momentous decision." *Chiles*, 146 S. Ct. at 1049 (Jackson, *J.*, dissenting).

28.     *Brokamp* reasoned that a license requirement for mental-health counselors was "subject to intermediate rather than strict scrutiny," *Brokamp*, 66 F.4th at 392, reasoning:

> New York's mental health licensing regime . . . is not a content-based restriction on speech. Like any license requirement, the one here at issue regulates—and to that extent limits—who can use the title "mental health counselor," or "practice mental health counseling," N.Y. Educ. Law § 8402(2)—activity that, for purposes of this appeal, we presume to consist only of speech. But New York's mental health counseling license requirement does not turn on the content of what a person says. Specifically, it does not license "views it finds acceptable," while refusing to license "less favored or more controversial views." *Police Dep't of Chi. v. Mosley*, 408 U.S. [92] at 96 [(1972)]. It does not condemn "certain ideas or viewpoints." *R.A.V. v. City of St. Paul*, 505 U.S. [377] at 387 [(1992)] (internal quotation marks omitted). It does not "prohibit[ ] public discussion of an entire topic." *Boos v. Barry*, 485 U.S. at [312] 319 [(1988)] (internal quotation marks omitted). Rather, New York's license requirement applies—regardless of what is said—only to speech having a particular purpose, focus, and circumstance. Thus, we conclude that New York's license-by-endorsement requirement is not content based, but rather content neutral.

*Id.* at 393 (footnote omitted).

29.     In *Chiles*, the Court held that the prohibition against the type of speech at issue violated the Free Speech Clause, even though the prohibition did not prohibit public discussion of an entire topic.

30.     The effect, on Shamwari 2, of Shamwari's speaking publicly in order to Help Shamwari 2 (the "Topic") would be substantially less than the effect of Shamwari's engaging in the Desired Speech privately with Shamwari 2.

31.     It would be unreasonable to expect, and impractical for, Shamwari to speak publicly about the Topic.

32.     In *Chiles*, the Court stated that content-based restrictions on speech are not limited to those that permit "views [that the State] finds acceptable[] while [prohibiting] less favored or more controversial views," *Brokamp*, 66 F.4th at 393 (citation and quotation marks omitted), but, rather, that this type of a restriction is a form of content-based restriction: "[v]iewpoint discrimination . . . represents an egregious form of content regulation." *Chiles*, 146 S. Ct. at 1021 (citations and quotation marks omitted).

33.     To the extent, if any, that *Brokamp*, in stating that the license requirement at issue "does not 'prohibit public discussion of an entire topic,'" *Brokamp*, 66 F.4th at 393, quoting *Boos*, 485 U.S. at 319, meant that the license requirement comported with the Free Speech Clause because the plaintiff was permitted to speak publicly about the topic to which her desired speech related, *Brokamp* misread *Boos*, as the Supreme Court, neither in *Boos* nor elsewhere, has found that permission to discuss a topic publicly entitled a government to restrict non-public discussion of, or relating to, such topic.

34.     To the extent, if any, that *Brokamp*'s statement that the license requirement at issue "does not 'prohibit public discussion of an entire topic,'" *Brokamp*, 66 F.4th at 393, quoting *Boos*,

6

485 U.S. at 319, was based on the notion that the Free Speech Clause concerned only public speech, that notion is erroneous, as the Free Speech Clause applies to non-public speech as well as public speech.

36.    The dissent in *Chiles*, which would have upheld the speech prohibition at issue, reasoned that strict scrutiny was inapplicable because the plaintiff had remained free to speak, both publicly and privately, about the topic to which her desired speech related, provided that she did not do so for the prohibited purpose of providing therapeutic treatment. *See Chiles*, 146 S. Ct. at 1035, 1039-1040, 1041-1042 (Jackson, *J.*, dissenting).

36.    With respect to *Brokamp*'s reasoning that a license requirement for mental-health counselors was "subject to intermediate rather than strict scrutiny," *Brokamp*, 66 F.4th at 392, because it "applies—regardless of what is said—only to speech having a particular purpose, focus, and circumstance . . . . [and thus is] not content based, but rather content neutral," *Brokamp*, 66 F.4th at 393 (footnote omitted), *Chiles* makes clear that strict scrutiny applies to speech regardless of the reason that one engages in it, including, specifically, where that reason is to provide therapeutic treatment to a person:

> The State insists . . . that its law does not "regulate expression" at all, only "conduct," "treatment," or a "therapeutic modality." As a result, [the State] reasons, its law triggers no more than rational-basis or intermediate-scrutiny review. But the State's premise is simply mistaken. In many applications, the State's law banning "conversion therapy" may address conduct—such as aversive physical interventions. But here, [the plaintiff] seeks to engage only in speech, and as applied to her the law regulates what she may say. Her speech does not become conduct just because the State may call it that. Nor does her speech become conduct just because it can also be described as a "treatment," a "therapeutic modality," or anything else. The First Amendment is no word game. And the rights it protects cannot be renamed away or their protections nullified by "mere labels."

***

[The plaintiff] seeks to speak with interested clients about steps they

7

might take to change unwanted behaviors, expressions, or attractions related to sexual orientation or gender identity—conduct [that the State] itself does not dispute those clients (or anyone else) may lawfully undertake.

*Chiles*, 146 S. Ct. at 1023, 1026 (citations omitted).

37. Because the Free Speech Clause affords the same treatment to 'professional speech' as other speech, the validity *vel non*, under the Free Speech Clause, of a prohibition on speech is the same for a person who, when engaging in such speech, is doing so in a professional context and a person who is not doing so in such context.

38. Because there is no favoritism of professional speech under the Free Speech Clause, a State could, if the Speech Prohibition were in comportment with the Free Speech Clause, apply that type of prohibition to persons who are licensed or otherwise authorized to practice the relevant profession.

39. The *Chiles* dissent employed *Brokamp*'s purpose-based reasoning, relying on the fact that the type of speech at issue in *Chiles* "occurs when a medical professional speaks to a client . . . for the purpose of providing medical care." *Chiles*, 146 S. Ct. at 1041 (Jackson, *J.*, dissenting). The dissent also stated: "most importantly, professional medical speech is made for the purpose of providing the patient with medical care. This speech is a tool employed to treat patients. In this sense, professional medical speech facilitates the professional's goal of providing the patient with the treatment, procedure, or healthcare that is within her expertise and that forms the basis of the professional-patient relationship." *Id.* (citation omitted) (Jackson, *J.*, dissenting). *See also id.* at 1050 ("[s]peech uttered for purposes of providing medical treatment may be restricted incidentally when the State reasonably regulates the speaker's provision of medical treatments to patients" (Jackson, *J.*, dissenting)).

40. The *Chiles* dissent recognized that the claims in the instant Complaint are meritorious

8

under *Chiles*:

> [T]o be completely frank, no one knows what will happen now. This decision might make speech-only therapies and other medical treatments involving practitioner speech effectively unregulatable—not to be reached via licensing standards, medical-malpractice liability, or any other means of state control. Who knows? Certainly not the majority. It appears to have made this momentous decision without adequately grappling with the potential long-term and disastrous implications of this ruling.
>
>         ***
>
> On the majority's view, . . . . [p]roviders who offer "cruel" speech-only therapies or who use speech to (intentionally or incompetently) harm the welfare of patients, for example, can now assert a First Amendment right to carry on, regardless of these standards.
>
>         ***
>
> Indeed, it is not at all clear how, or to what extent, state regulation of medical care involving practitioner speech can survive this holding.

*Id.* at 1049 (Jackson, *J.*, dissenting).

  **C.**  **The Speech Prohibition is Void for Vagueness**

41.  The Statutory Definition is so broad and general that it fails to give ordinary persons fair notice of the speech that the Speech Prohibition forbids.

42.  The Statutory Definition is so standardless that the Speech Prohibition invites arbitrary enforcement.

**VI.**  **Plaintiffs Preserve Their Rights to Further Appellate Review**

43.  Shamwari and Shamwari 2 each preserve their right to address, upon further appellate review, any issues that are found to foreclose their claims.

9

**REQUESTS FOR RELIEF**

Plaintiffs request:

(a)     a judgment, pursuant to 28 U.S.C. Sections 1983 and 2201(a), declaring that the Speech Prohibitions are un-Constitutional insofar as they prohibit Shamwari from engaging in the Desired Speech;

(b)     a judgment, pursuant to 28 U.S.C. Sections 1983 and 2201(a), declaring that the Speech Prohibitions are un-Constitutionally vague; and

(c)     an order, pursuant to 28 U.S.C. Section 1983, directing James not to enforce the Speech Prohibitions.

Dated: May 1, 2026

                              Respectfully submitted,

                                _s/ *Todd C. Bank*_____
                              TODD C. BANK,
                                ATTORNEY AT LAW, P.C.
                              119-40 Union Turnpike
                              Fourth Floor
                              Kew Gardens, New York  11415
                              (718) 520-7125
                              By Todd C. Bank

                              *Counsel to Plaintiffs*