UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAMWARI and SHAMWARI 2,<br><br>*Plaintiffs*,<br><br>-against-<br><br>LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,<br><br>*Defendant*. | 1:26-cv-03926-JPC-KHP |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
ORDER ENJOINING DEFENDANT FROM ENFORCING
THE CHALLENGED LAWS AGAINST PLAINTIFFS**

TODD C. BANK,
 ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York  11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiffs*

**TABLE OF CONTENTS**

                                                                                            **Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CONSTITUTIONAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REQUEST FOR STAY OF ORDER DENYING PLAINTIFFS'
MOTION TO PROCEED PSEUDONYMOUSLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARDS GOVERNING REQUEST FOR
A TEMPORARY RESTRAINING ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE
        MERITS OF THEIR CLAIM THAT THE SPEECH
        PROHIBITION VIOLATES THE FIRST AMENDMENT . . . . . . . . . . . . . . . . . . . . . 3

        A.      The Speech Prohibition is Content-Based
                and is Therefore Subject to Strict Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                (i)      Strict Scrutiny is not Limited to Viewpoint-
                         Based Restrictions on Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                (ii)     Strict Scrutiny is not Limited to Restrictions
                         on Public Discussion of an Entire Topic . . . . . . . . . . . . . . . . . . . . 5

                (iii)    Characterizing a Restriction on Speech as Being Based
                         on the Purpose, Focus, or Circumstance of the Targeted
                         Speech does not Preclude the Application of Strict Scrutiny . . . . . . . . . 7

        B.      Shamwari's Prohibited Speech, Insofar as it Would Concern
                Potential Actions by Shamwari 2, Would Concern Actions
                that Shamwari 2 Could Lawfully Undertake . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      The Speech Prohibition does not Survive Strict Scrutiny . . . . . . . . . . . . . . . . . 9

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON
        THE MERITS OF THEIR CLAIM THAT THE
        SPEECH PROHIBITION IS VOID FOR VAGUENESS . . . . . . . . . . . . . . . . . . . . 11

i

**Page**

**Table of Contents (*cont'd*)**

III.    THE IRREPARABLE-HARM REQUIREMENT IS SATISFIED . . . . . . . . . . . . . . . . 12

IV.    THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR,
AND AN INJUNCTION IS IN THE PUBLIC INTEREST . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Am. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7, 8, 9, 10, 12, 13

U.S. Const., Am. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const., Am. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**STATUTES AND RULES**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Educ. Law § 7601-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**CASES**

*725 Eatery Corp. v. City of New York*,
   408 F. Supp. 3d 424 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*American Council of Learned Societies v. McDonald*,
   792 F. Supp. 3d 448 (S.D.N.Y. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ashcroft v. American Civil Liberties Union*,
   542 U.S. 656 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bakken v. United States Military Academy*,
   No. 25-cv-7826, --- F. Supp. 3d ---,
   2026 WL 1469754 (S.D.N.Y. May 26, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barr v. American Ass'n of Political Consultants, Inc.*,
   591 U.S. 610 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brokamp v. District of Columbia*,
   No. 20-cv-3574, 2022 WL 681205
   (D.D.C. Mar. 7, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Page**

**Table of Authorities; Cases (*cont'd*)**

*Brokamp v. James*,
  66 F.4th 374 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7, 9

*Chiles v. Salazar*,
  146 S. Ct. 1010 (2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7, 8, 9, 10

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
  596 U.S. 61 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Cohen v. California*,
  403 U.S. 15 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fed. Election Comm'n v. Ted Cruz for Senate*,
  596 U.S. 289 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Free Speech Coalition, Inc. v. Paxton*,
  606 U.S. 461 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Crim. Contempt Procs. Against Crawford*,
  329 F.3d 131 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Johnson v. United States*,
  576 U.S. 591 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mahmoud v. Taylor*,
  606 U.S. 522 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Murthy v. Missouri*,
  603 U.S. 43 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nat'l Institute of Family and Life Advocates v. James*,
  160 F.4th 360 (2d Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*New Jersey v. United States Dep't of Transportation*,
  No. 26-cv-00939, --- F. Supp. 3d ---,
  2026 WL 323341 (S.D.N.Y. Feb. 6, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Page**

**Table of Authorities; Cases (*cont'd*)**

*N.Y. Progress & Prot. PAC v. Walsh,*
  733 F.3d 483 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Otoe-Missouria Tribe of Indians v.*
 *New York State Dep't of Fin. Servs.,*
  769 F.3d 105 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*R.A.V. v. City of St. Paul,*
  505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Siguencia-Romero v. Joyce,*
  No. 25-cv-8975, 2025 WL 3090887
  (S.D.N.Y. Nov. 5, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Walden v. Kosinski,*
  153 F.4th 118 (2d Cir. 2025)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

*Welch v. United States,*
  578 U.S. 120 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**BACKGROUND**

Plaintiffs incorporate herein, as the factual background, paragraphs 1 through 19 of the Complaint (Doc. 1) (*N.B.*: as used herein, the capitalized terms that are capitalized and defined in the Complaint (Doc. 1) have the same definitions as therein).

On May 1, 2026, Plaintiffs commenced the instant action (the "Action") in the Eastern District of New York (No. 1:26-cv-02620-CBA-RML), by filing what thereby became the Complaint.

On May 1, 2026, Plaintiffs, pursuant to 28 U.S.C. Section 1404(a), made a motion, in the Eastern District of New York, to have the Action transferred to the Southern District of New York (Doc. 4).

On May 11, 2026, the Eastern District of New York issued an order granting the motion for transfer (Doc. 8).

On May 11, 2026, the Action was transferred to the Southern District of New York (NDA).

On May 11, 2026, the Action was "opened in Southern District of New York as case 1:26-cv-0392" (NDA).

On May 12, 2026, Plaintiffs made a motion to proceed pseudonymously (the "Pseudonym Motion"; Doc. 11).

On May 13, 2026, Magistrate Judge Katharine H. Parker issued an Order denying the Pseudonym Motion (the "Pseudonym Denial"; Doc. 14).

On May 15, 2026, Plaintiffs made an Objection to the Pseudonym Denial (the "Pseudonym Objection"; Doc. 16).

**REQUEST FOR STAY OF ORDER DENYING PLAINTIFFS'
MOTION TO PROCEED PSEUDONYMOUSLY**

Given the emergency nature of a temporary restraining order, a stay of the Pseudonym Denial should be granted pending the first of the following: (i) the resolution of the instant motion; or (ii)

1

the resolution of the Pseudonym Objection. If the instant motion were granted during such stay, James would, of course, be given the identities of Plaintiffs in confidence. Thus, James would not be prejudiced by the stay.

**STANDARDS GOVERNING REQUEST FOR A TEMPORARY RESTRAINING ORDER**

"The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." *New Jersey v. United States Dep't of Transportation*, No. 26-cv-00939, --- F. Supp. 3d ---, 2026 WL 323341, *3 (S.D.N.Y. Feb. 6, 2026) (altered; citation and quotation marks omitted). Indeed, a temporary restraining order "TRO"), as reflected by this fact, is simply such an injunction without the opportunity for the enjoined party to be fully heard. *See Siguencia-Romero v. Joyce*, No. 25-cv-8975, 2025 WL 3090887, *1, n.1 (S.D.N.Y. Nov. 5, 2025), citing *In re Crim. Contempt Procs. Against Crawford*, 329 F.3d 131, 138 (2d Cir. 2003).

The standards for obtaining a TRO, which plaintiffs "must show[,] [are] that **(1)** they are likely to succeed on the merits; **(2)** they are likely to suffer irreparable harm in the absence of preliminary relief; **(3)** the balance of equities tips in their favor; and **(4)** an injunction is in the public interest." *Id.* (bolding added; citation and quotation marks omitted). Because a TRO "is an extraordinary and drastic remedy, [it] should not be granted unless the movant, by a clear showing, carries the burden of persuasion," *Walden v. Kosinski*, 153 F.4th 118, 134 (2d Cir. 2025) (citations and quotation marks omitted); and, because the instantly requested TRO would "affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the [movant] must demonstrate a clear or substantial likelihood of success on the merits," *id.* (citation and quotation marks omitted), and may not rely upon the otherwise-applicable alternative, *i.e.*, showing that there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation." *Otoe-*

2

*Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014); *see also id.* (explanation).

As the foregoing shows, Plaintiffs bear a heavy burden; but, as shown below, Plaintiffs have met that burden.

Because "the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

Although it is well settled that, "[w]hen the Government restricts speech, the Government bears the burden of proving the [C]onstitutionality of its actions," *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 305 (2022) (citation and quotation marks omitted), and that this burden also applies where a preliminary injunction is sought by a free-speech plaintiff, *see Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 665-666, 669 (2004); *accord*, *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459-460 (S.D.N.Y. 2019), Plaintiffs necessarily bear the burden to the extent that the Court were to rule on the instant motion without hearing from James.

## ARGUMENT

### POINT I

**PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT THE SPEECH PROHIBITION VIOLATES THE FIRST AMENDMENT**

In *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023), a mental-health counselor with an out-of-state license but not a New York license brought a similar challenge to the present one. The court, which "assume[d], without deciding, that her counseling services consist only of speech without any non-verbal conduct," *id.* at 392, "conclude[d] that New York's mental[-]health[-]counseling license requirement is content[-]neutral, and [subject to] intermediate, rather than strict, scrutiny." *Id.* at 397. However, *Brokamp* has been abrogated by *Chiles v. Salazar*, 146 S. Ct. 1010 (2026), the dissent in

which called *Chiles* a "momentous decision," *id.* at 1049 (Jackson, *J.*, dissenting), and stated that, "[i]ndeed, it is not at all clear how, or to what extent, state regulation of medical care involving practitioner speech can survive this holding." *Id.* (Jackson, *J.*, dissenting).

In *Brokamp v. District of Columbia*, No. 20-cv-3574, 2022 WL 681205 (D.D.C. Mar. 7, 2022), which involved the same type of challenge as did *Brokamp v. James*, and thus the same type of challenge as in this Action, the court explained:

> The licensing requirement is . . . *content-based*, given that it only applies to [the] [p]laintiff's speech if she speaks about *certain topics*, *such as her clients' mental, emotional, or behavioral issues*; meanwhile, she is able to discuss *other topics* with them without a license. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 [(591 U.S. 610, 618-619)] (2020) (plurality). Because the [defendant]'s licensing requirement is *content-based* regulation of speech, *strict scrutiny applies*[.]

*Id.* at *1 (emphases added, as are all emphases herein unless otherwise noted). Whereas *Brokamp v. District of Columbia* remains correct after *Chiles*, *Brokamp v. James* is manifestly erroneous after *Chiles*, as set forth in Points I(A) and (B), *infra*.

**A.   The Speech Prohibition is Content-Based
      and is Therefore Subject to Strict Scrutiny**

**(i)   Strict Scrutiny is not Limited to Viewpoint-
        Based Restrictions on Speech**

*Brokamp v. James* ("*Brokamp*") found that strict scrutiny did not apply to the license requirement, reasoning: "[the] license requirement does not turn on the content of what a person says. Specifically, it does not license views it finds acceptable, while refusing to license less favored or more controversial views. It does not condemn certain ideas or viewpoints," *Brokamp*, 66 F.4th at 393 (citations and quotation marks omitted). However, although "the First Amendment's hostility to content-based regulation extends . . . to restrictions on particular viewpoints," *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61, 70 (2022) (altered; citations and quotation

4

marks omitted), strict scrutiny is not limited to such regulations, as they are merely a *type* of content-based restriction. As explained in *Chiles*:

> [L]aws regulating speech based on its *subject matter or communicative content* are *presumptively unconstitutional*. As a general rule, *such content-based restrictions trigger strict scrutiny*, a demanding standard that requires the government to prove its restriction on speech is "narrowly tailored to serve compelling state interests. Under that test, it is *rare that a regulation will ever be permissible*.
>
> We have recognized, as well, the *even greater dangers* associated with regulations that discriminate based on the speaker's *point of view*. When the government seeks not just to restrict speech based on its *subject matter*, but *also* seeks to dictate what *particular opinion or perspective* individuals may express on that subject, the violation of the First Amendment is *all the more blatant*.

*Chiles*, 146 S. Ct. at 1021 (altered; citations and quotation marks omitted). In sum: "[v]iewpoint discrimination . . . represents an egregious *form* of content regulation." *Id.* (citation and quotation marks omitted).

### (ii)   Strict Scrutiny is not Limited to Restrictions on Public Discussion of an Entire Topic

*Brokamp* reasoned: "[the license requirement] does not prohibit public discussion of an entire topic." *Brokamp*, 66 F.4th at 393 (altered; citation and quotation marks omitted).

Although "the First Amendment's hostility to content-based regulation extends . . to prohibition of public discussion of an entire topic," *City of Austin*, 596 U.S. at 70 (altered; citations and quotation marks omitted), that "hostility," and thus strict scrutiny, are not limited to such prohibitions, for *Chiles*, which concerned an "as-applied challenge," *Chiles*, 146 S. Ct. at 1018, to a prohibition against the provision of 'conversion therapy,' *see id.* at 1017-1018, involved *only private speech*. *See id.* at 1017 ("*[a]ll* [the plaintiff] offers is *talk therapy*); *id.* at 1018 ("[the plaintiff] objected to Colorado's law only as it applies to *her talk therapy*"); *id.* at 1020:

> [The plaintiff] stresses that she provides *only talk therapy*, employing

5

no physical techniques or medications. Yet, she argues, Colorado's law still applies to her, prescribing what she may say in *"voluntary counseling conversations" with her clients*. And because that application of the law strikes at the heart of the First Amendment's protections for free speech, she contends, it warrants considerably more searching scrutiny than the rational-basis review the Tenth Circuit applied in this case or the intermediate-scrutiny review some other lower courts have employed in cases like hers. We agree.

*Id.* at 1020 (citations omitted). *See also id.* at 1023 ("[a]s a talk therapist, all [the plaintiff] does is *speak with clients*; she does not prescribe medication, use medical devices, or employ any physical methods"); *id.* at 1025 ("[a]ll [the plaintiff] does is speak—and, as far as she is concerned, speech is all Colorado seeks to regulate.").

*Chiles* held that the prohibition against the plaintiff's private speech violated the Free Speech Clause, even though the prohibition "[did] not prohibit public discussion of an entire topic." *Brokamp*, 66 F.4th at 393. Indeed, the *dissent* in *Chiles*, which would have upheld the prohibition, reasoned that strict scrutiny was inapplicable because the plaintiff had remained free to speak, *publicly and privately*, about the *topic* to which her desired speech related. *See Chiles*, 146 S. Ct. at 1035 ("[the plaintiff] is free to express her opinion about the efficacy of conversion therapy or her disagreement with Colorado's conclusion that such therapy is harmful to minors. Colorado's law does not target or prohibit the expression of such views by anyone *in any form*—including by licensed healthcare providers in discussions with patients and their families" (Jackson, *J.*, dissenting)).

As shown in *Chiles*, restrictions on private speech, and restrictions that do not limit (public or private) discussion of an "entire topic," are not thereby immune from being subject to strict scrutiny. Therefore, *Brokamp*'s reasoning that the license requirement at issue there was immune from strict scrutiny because it "[did] not prohibit public discussion of an entire topic," *Brokamp*, 66 F.4th at 393, is plainly erroneous under *Chiles*.

6

**(iii)    Characterizing a Restriction on Speech as Being Based on the Purpose, Focus, or Circumstance of the Targeted Speech does not Preclude the Application of Strict Scrutiny**

*Brokamp* reasoned: "New York's license requirement applies—*regardless of what is said*—only to speech having a *particular purpose, focus, and circumstance*. Thus, we conclude that New York's license-by-endorsement requirement is *not content[-]based*, but rather *content[-]neutral*." *Brokamp*, 66 F.4th at 393 (footnote omitted). However, the law that was at issue in *Chiles* was likewise directed at "speech having a particular purpose, focus, and circumstance":

> Colorado's ban on conversion therapy . . . forbid[s] "*any* practice or treatment ... that attempts ... to change an individual's sexual orientation or gender identity[]" (emphasis added). The law forbids as well any "effor[t] to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attraction or feelings toward individuals of the same sex."

*Chiles*, 146 S. Ct. at 1018 (statutory citations omitted). *Chiles* rejected the notion that a content-based restriction ceases to be subject to strict scrutiny when it is characterized as purpose-based:

> The State insists . . . that its law *does not "regulate expression" at all*, only "conduct," "treatment," or a "therapeutic modality." As a result, [the State] reasons, its law triggers *no more than rational-basis or intermediate-scrutiny review*. But the State's premise is simply mistaken. In many applications, the State's law banning "conversion therapy" may address conduct—such as aversive physical interventions. But here, [the plaintiff] seeks to engage *only in speech*, and as applied to her *the law regulates what she may say*. Her speech *does not become conduct just because the State may call it that*. Nor does her speech become conduct *just because it can also be described as a "treatment," a "therapeutic modality," or anything else. The First Amendment is no word game*. And the rights it protects cannot be *renamed away or their protections nullified by "mere labels."*

*Id.* at 1023 (citations and quotation marks omitted).

If the Speech Prohibition were deemed content-neutral and therefore not subject to strict scrutiny, then countless restrictions on speech could avoid strict scrutiny by being characterized as targeted at the *purpose* of such speech rather than the speech *itself*; thus, the State would be able,

7

without fear of strict scrutiny, to require one to be licensed in order to advise a person regarding athletic performance, fashion, consumption of entertainment, etc. Just as the State could say, "we don't care what Shamwari says in order to Help Shamwari 2, but only whether, regardless of what he says, it is said for that purpose, and, therefore, the Speech Prohibition is content-neutral," the State could likewise say, "we don't care what Shamwari says in order to help Shamwari 2 with his golf swing, the color of his shirt, or what movie to watch . . ." Clearly, the notion that such reasoning, which bears the same logic as it would concerning the Speech Prohibition, would render these purpose-characterized restrictions as content-neutral, and therefore not subject to strict scrutiny, is absurd.

In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the court held, with respect to a statute that prohibited various activities whose purpose was to help a foreign terrorist organization, that strict scrutiny applied with respect to one such activity, *i.e.*, the provision of expert advice. *Chiles* described *Holder*:

> [*Holder*] involved a federal law banning the provision of *"material support"* to certain foreign terrorist organizations. Much as California had in *Cohen* [*v. California*, 403 U.S. 15 (1971)], the federal government in *Holder* argued that the law did not trigger strict scrutiny because it addressed *"conduct, not speech."* We disagreed. True, we acknowledged, the law often might regulate conduct. But, we observed, in the case before us the government threatened to prosecute lawyers, doctors, and others for providing *spoken* training and expert *advice* (such as "how to use humanitarian and international law to peacefully resolve disputes") to certain groups. And that application of the law, we held, sought to "regulate speech *on the basis of its content*" and thus demanded *strict-scrutiny review.*
>
> ***
>
> Just because a law may generally function as a regulation of conduct, we held [in *Holder*], does not exempt it from demanding First Amendment review when a government seeks to apply that law to speech alone.

*Chiles*, 146 S. Ct. at 1022, 1025 (altered; citations and additional quotation marks omitted). As with

8

the license requirement at issue in *Brokamp*, the statute at issue in *Holder* applied to speech, regardless of what was said, as long as it served the purpose of helping a subject organization.

The *dissent* in *Chiles* employed *Brokamp*'s purpose-based reasoning, relying on the fact that the type of speech at issue in *Chiles* "occurs when a medical professional speaks to a client . . . for the *purpose* of providing medical care." *Chiles*, 146 S. Ct. at 1041 (Jackson, *J.*, dissenting). The dissent similarly stated:

> [M]ost importantly, professional medical speech is made for the *purpose* of providing the patient with medical care. This speech is *a tool employed to treat patients*. In this sense, professional medical speech facilitates the professional's *goal* of providing the patient with the treatment, procedure, or healthcare that is within her expertise and that forms the basis of the professional-patient relationship.

*Id.* (citation omitted) (Jackson, *J.*, dissenting). *See also id.* at 1050 ("[s]peech uttered for *purposes* of providing medical treatment may be restricted incidentally when the State reasonably regulates the speaker's provision of medical treatments to patients" (Jackson, *J.*, dissenting)).

**B.     Shamwari's Prohibited Speech, Insofar as it Would Concern Potential Actions by Shamwari 2, Would Concern Actions that Shamwari 2 Could Lawfully Undertake**

*Chiles* observed: "[the plaintiff] seeks to speak with interested clients about steps they might take to change unwanted behaviors, expressions, or attractions related to sexual orientation or gender identity—conduct [that the State] itself does not dispute those clients (or anyone else) *may lawfully undertake*." *Id.* at 1026. Likewise, Shamwari does not allege that any actions that he might advise Shamwari 2 to take would be unlawful.

**C.     The Speech Prohibition does not Survive Strict Scrutiny**

As explained in *Chiles*, "[c]onsistent with the First Amendment's jealous protections for the individual's right to think and speak freely, th[e] [Supreme] Court has long held that laws regulating speech based on its subject matter or communicative content are *presumptively unconstitutional*." *Chiles*, 146 S. Ct. at 1021 (citation and quotation marks omitted). That is because "content-based

restrictions trigger *strict scrutiny*, a *demanding standard* that requires the government to prove its restriction on speech is *narrowly tailored* to serve *compelling state interests*," *id.* (citation and quotation marks omitted); that is, "[s]trict scrutiny . . . requires a restriction to be *the least restrictive means* of achieving a *compelling governmental interest*[,] [and] is the *most demanding test known to [C]onstitutional law.*" *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (citation and quotation marks omitted). So demanding is strict scrutiny that, "[u]nder [this] test, it is *rare* that a regulation will *ever be permissible.*" *Chiles*, 146 S. Ct. at 1021 (altered; citations and quotation marks omitted); and, "[w]hile the First Amendment protects many and varied forms of expression, the spoken word is perhaps the quintessential form of protected speech." *Id.* at 1023.

Permissible content-based restrictions have almost uniformly been limited to "a few historic and traditional categories of expression long familiar to the bar[,] . . . [which] include fraud, defamation, and fighting words." *Id.* at 1021 (citation and quotation marks omitted). These categories of speech, which also include "incitement to riot [and] obscenity," *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 504 (1984) (citations omitted), are not actually exceptions to the First Amendment, as they are simply "outside the scope of the freedom of speech," *id.*, for "the 'freedom of speech' referred to by the First Amendment does not include a freedom to disregard . . . traditional limitations [on speech] . . . . [such as] 'fighting' words[,] . . . defamation [to a degree][,] . . . [and] obscenity." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992). As the Desired Speech indisputably falls within the "freedom of speech" against the "abridg[ment]" of which a legislature "shall make no law," and as the Speech Prohibition is content-based, it must satisfy strict scrutiny in order to be Constitutional.

To the extent that Plaintiffs bear the burden, *i.e.*, with respect only to the request for a TRO, that burden is easily satisfied. The State presumably has a strong interest in seeing that persons do not misrepresent their credentials (license, education, training, etc.) to engage in what the State

defines as "'[t]he practice of psychology,'" Compl., ¶ 13, quoting Education Law Section 7601-a, but the notion that the State has a strict-scrutiny-satisfying interest in seeing that Shamwari does not engage in the Desired Speech is absurd. Indeed, if the Speech Prohibition were enforced against all violators, there would be almost no one left to enforce it because nearly every citizen of this State would be in prison.

**POINT II**

**PLAINTIFFS ARE LIKELY TO SUCCEED ON
THE MERITS OF THEIR CLAIM THAT THE
SPEECH PROHIBITION IS VOID FOR VAGUENESS**

The void-for-vagueness doctrine applies equally under the Fifth Amendment and, as governs here, the Fourteenth Amendment. *See Welch v. United States*, 578 U.S. 120, 124 (2016). In *Johnson v. United States*, 576 U.S. 591 (2015), the court noted that, "[the] guarantee [against] taking away someone's life, liberty, or property [without due process is violated by] a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 595. This principle is fundamental, as such a law "violates the first essential of due process." *Id.* (citation and quotation marks omitted). Furthermore, "[w]hen speech is involved, rigorous adherence to [the void-for-vagueness doctrine] is necessary to ensure that ambiguity does not chill protected speech." *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-254 (2012).

There is little doubt that the vast majority of violations of the Speech Prohibition are unlikely to be prosecuted, but how would Shamwari know just where the State would draw the line with respect to the Desired Speech? Thus, the Speech Prohibition has forced Shamwari to choose: (i) self-censoring by refraining from the Desired Speech; or (ii) engaging in the Desired Speech and thereby risking prosecution. He has chosen the former option, *see* Compl., ¶¶ 17, 18, but the void-for-vagueness doctrine is intended precisely to prevent one from being forced to choose from those two

11

options in the first place, *i.e.*, between refraining from a certain behavior vs. engaging in that behavior and thereby having to walk among legal eggshells.

"But for the Speech Prohibition," *id.*, ¶ 19, which has induced Shamwari to self-censor, "Shamwari 2 would already be engaging in listening to the Desired Speech." *Id.* Shamwari 2, as a would-be listener of the Desired Speech, has standing, for there is a "First Amendment right to receive information and ideas . . . where the listener has a concrete, specific connection to the speaker," *Murthy v. Missouri*, 603 U.S. 43, 75 (2024), which is plainly the case here.

Even if there are certain instances of speech to which the Speech Prohibition would clearly apply, the prohibition would remain void for vagueness, as the Supreme Court has rejected the notion that "a statute is void for vagueness only if it is vague in *all* its applications." *Johnson*, 576 U.S. at 603 (citation and quotation marks omitted).

<u>**POINT III**</u>

<u>**THE IRREPARABLE-HARM REQUIREMENT IS SATISFIED**</u>

Plaintiffs are currently being harmed by the Speech Prohibition, as, "[b]ut for the Speech Prohibition, Shamwari would already be engaging in the Desired Speech," Compl., ¶ 18, and, "[b]ut for the Speech Prohibition, Shamwari 2 would already be engaging in listening to the Desired Speech." *Id.*, ¶ 19. Therefore, Plaintiffs have been, and continue to be, irreparably harmed, as, for the purpose of the irreparable-harm requirement, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (citations and quotation marks omitted). Therefore, "where a First Amendment right has been violated, the irreparable[-]harm requirement . . . has been satisfied." *Nat'l Institute of Family and Life Advocates v. James*, 160 F.4th 360, 379 (2d Cir. 2025) (citation and quotation marks omitted).

12

## POINT IV

## THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR, AND AN INJUNCTION IS IN THE PUBLIC INTEREST

"When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge," *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021); *see also Nat'l Institute of Family and Life Advocates*, 160 F.4th at 373 (same). These considerations weigh in favor of the requested relief, as "'securing First Amendment rights is in the public interest,'" *Bakken v. United States Military Academy*, No. 25-cv-7826, --- F. Supp. 3d ---, 2026 WL 1469754, *36 (S.D.N.Y. May 26, 2026), quoting *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Furthermore, "the Government does not have an interest in the enforcement of an unconstitutional law," *N.Y. Progress & Prot. PAC*, 733 F.3d at 488 (altered; citation and quotation marks omitted); *see also American Council of Learned Societies v. McDonald*, 792 F. Supp. 3d 448, 495 (S.D.N.Y. 2025) ("there is no public interest in the perpetuation of unlawful agency action" (citation and quotation marks omitted)).

**[continued on next page]**

13

## CONCLUSION

Plaintiffs respectfully request that this Court grant (i) a temporary restraining order enjoining Defendant, Letitia James, in her official capacity as the Attorney General of the State of New York, from enforcing the speech prohibition against Shamwari; and (ii) any additional lawful and proper relief to Plaintiffs.

Dated: June 3, 2026

Respectfully submitted,

 s/ *Todd C. Bank*
TODD C. BANK,
  ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York  11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiffs*

14

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)</u>

This memorandum of law contains 4,383 words.

Dated: June 3, 2026

<u>  s/ *Todd C. Bank*                </u>
Todd C. Bank

## <u>CERTIFICATE OF NOTICE</u>

I hereby certify that, on June 2, 2026, between 2:20 pm and 2:30 pm: I provided a copy of the foregoing by email to Barbara D. Underwood, Solicitor General of New York, at barbara.underwood@ag.ny.gov (a copy of this email is annexed hereto); and, I telephoned Ms. Underwood and thereupon told her that I would file the foregoing on June 3, 2026.

Dated: June 3, 2026

                         s/ *Todd C. Bank*
                         Todd C. Bank

# Email from Todd C. Bank to Barbara D. Underwood

# June 2, 2026

**Subject:** MOTION FOR TEMPORARY RESTRAINING ORDER - Shamwari et al. v. James; No. 1:26-cv-03926-JPC-KHP (S.D.N.Y.)
**From:** Todd Bank <tbank@toddbanklaw.com>
**Date:** 6/2/2026, 2:22 PM
**To:** barbara.underwood@ag.ny.gov

Ms. Underwood:

I represent the plaintiffs in the above-referenced matter. Attached is a copy of the Complaint and a **MOTION FOR TEMPORARY RESTRAINING ORDER** to prevent the Attorney General from enforcing, against the first-named Plaintiff, New York Education Law Section 7601. **I intend to file the motion tomorrow, *i.e.*, on June 3, 2026.** This notification to you of the motion is **not** formal notice under Rule 6(c) of the Federal Rules of Civil Procedure.

Sincerely,

Todd C. Bank
Attorney at Law
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York  11415
(718) 520-7125
tbank@toddbanklaw.com

---Attachments:---

| | |
|---|---|
| MOTION FOR TEMPORARY RESTRAINING ORDER - Shamwari et al. v. James; No. 126-cv-03926-JPC-KHP (S.D.N.Y.).pdf | 159 KB |
| Complaint DE 1.pdf | 128 KB |